Case number 18-18-75, Asad Khan v. Reza Khan. If you guys get set with the lawyers who are going to argue the case, please approach the bench and introduce yourself to the court. Good morning, Your Honor. My name is Naveed Hussain, H-U-S-A-I-N, on behalf of Asad Khan v. Appellant. Richard Stavins, S-T-A-V-I-N-S, on behalf of Appellant. And do you want to reserve some time for rebuttal? Yes, I would like to reserve some time, Your Honor. How much? Five minutes. Okay. Let's proceed. Thank you. May it please the Court, as I stated, my name is Naveed Hussain on behalf of the Appellant, Asad Khan. This case is about whether a oral agreement, a valid oral agreement, was reached and whether the judge's recollection of any of those terms were proper or faulty. Based on the record in the pleadings, it is evident that the meeting of the minds did not occur on the December 30, 2015, settlement conference. I have a question. Yes. If your position is that there's no settlement agreement that was reached on December 30, 2015, then why did the court's order that was entered on that date indicate that there was a settlement? Your Honor, I think both parties thought there was a settlement agreement, but when they left that settlement conference, each one of them had a totally different idea of what that settlement actually entailed. So, therefore, our position is that there was not a meeting of the minds coming out of that December 30 meeting. But this was an order that was provided to the court. I don't know who drafted it, but it was provided to the court. It was entered by the court. Yes, it was. Indicating that there was a settlement. Yes. In that particular order, it states that the judge was advised that a settlement had been reached. There is no mention of any of the terms. And like I said, Your Honor, that as they left, each one of them had a totally different idea of what that actual settlement was. And so then, taking that position, then what are the essential terms that are missing? The essential terms is what is actually being split here. So I think there's no question as to what the percentage is, 52.8 and 47.2 percent. The question is what is actually being split here. So when the judge first begins on the August 1, 2018 hearing, her recollection is that the land, everything is going to be split in these percentages. After counsel for Asad Khan went back and forth with the judge, the judge then changed her position and said, okay, the revenue from the land will be split in this particular percentage. Finally, again, after some more back and forth, the judge then finally took the position that this relates to mineral and energy rights. So just in and of itself, the judge's shifting of what her recollection was is not what the parties had agreed to at that time. So what are the essential terms that are missing? The essential terms is what is actually being split. Is the land being split? Is the mineral rights being split? Is the revenue being split? Is the easements being split? So this was not decided and was not clear on the record or on behalf of each one of these litigants. But wasn't it the judge's position that everything was split with that percentage? Excuse me? Wasn't it the judge's position that everything was split? In the beginning, yes, it was. But the final order did not reflect that. The initial record shows that the judge, when she first came onto the bench, her recollection was, yes, everything, the land, the acres of land, we have over 200 acres of land, that will simply be divided in these 57 in the percentages 52 and 48 percent. Later on in that same proceeding, you see that the judge then says, you know what? This is actually the revenue that's being generated for the land. The actual ownership is not going to be split in this particular percentage. Rather, the revenue that's generated will be split in this position. Then further down in the proceeding, you see that the position is all abandoned. It's not the land ownership that's going to be split. It's not the revenue from the land that's going to be split. Rather, it's the mineral rights that are coming from this property that are going to be split in this particular percentage. Our whole position, Your Honor, is that by having this type of a agreement that totally negates the land rights that Asad Khan had bargained for, Asad Khan came into this settlement with the idea that the land is going to be separate and the mineral rights will be separate. As we learned in property classes, you know, property is a bundle of sticks, and you're able to divide those sticks as you wish. In Asad Khan's mind, the way that these sticks were divided was that the mineral rights will be given to this ARC LLC, and the ownership will stay with him. And that allows him then to take advantage of the land, rent out the land, have horses on the land, have roads and easements come across his land and benefit from that. I thought the mineral rights were due to fracking. Yes, due to fracking. Well, he's not having horses and frolicking about the land if they're fracking the land. Well, Your Honor, in one plot of land there's 115 acres, and in another land there's 102. So there's plenty of room for there to be additional, if they so choose, yes. So does he hold title to the parcels of land right now? Who holds title to the parcels of land? Sure. Right now the title is held in two different portions. The 115 to 121, we kind of refer to that as the 115 plot. It's not clear exactly how many acres of land there are. So that was owned previously by Asad Khan and Fazal Khan, the decedent, jointly. West Virginia doesn't have a presumption of survivorship, so that was split then 50-50. So that means that Asad Khan – So the 115 is split 50-50? Exactly. So that means that Asad Khan has approximately 60 acres of land, and the rest of the land, the 102 acres that was in Fazal Khan's name, and 50 percent of this plot are in the estate of Fazal Khan. So already, with that simple understanding that Asad Khan already has a right by title and ownership of this particular land cuts against what the settlement is proposing. Your Honor, the other interesting aspect is really the judge's recollection is erroneous. I know we're really looking at the K-4 case here, the K-4 enterprise case, and I think this case does – is distinguished from that case for a number of reasons. First, Your Honor, the judge's recollection in this particular case goes against both of the parties' settlement proposal. In K-4, each party had submitted their proposals, and the judge ended up picking one of them. Here, we have three different proposals and three different ideas of what this settlement actually was. Secondly, Your Honor, in the K-4 case, the judge had to make a recollection of a money amount. There's actually a quote in the K-4 case that says this is a money issue, this is not a definition issue. Here, the judge is making a recollection of a definition that none of the parties actually agree on. No one really understands what the word royalty is actually speaking to. So I believe that our case at hand differs with K-4 in that material respect, that that judge simply had to say whether it's 2.4 million or 2.8 million. Here, the judge has to recollect what are we talking about with royalties. Are we talking about mineral rights? Are we talking about easements? And on that point, you don't get royalties from easements. You get lease money or rental money from easements that are on your land. Third, the judge in the K-4 case, the recollection was just a few months later. In our case, this is almost three years later where the judge is asked to make a recollection, and the record itself shows that the judge's recollection was faulty, erroneous, and unsubstantiated by the two settlement agreements as well as the signed LLC agreement. And I think that's another really interesting point here is that months after the settlement agreement, you have a signed LLC agreement. That signed LLC operating agreement totally goes against what the judge's initial recollection was. In the LLC agreement, only the mineral rights are being assigned to the LLC. There's no mention of land. There's no mention of easements or anything else. And this is an agreement that both of the parties have executed. So even if there was a meeting of the minds, this LLC agreement withdraws and amends that initial settlement agreement, which may have taken place in December 30, 2015. The issue here is that in order for us to have an oral agreement, there has to be an offer, acceptance, and meeting of the minds. And here there simply was not a meeting of the minds. None of the parties knew what they were actually splitting. Are they splitting land? Are they splitting minerals? And the material terms have to be definite and certain. And Quinlan actually does a good job to tell us what material terms actually are, is assent to the same things in the same sense on all essential terms. And that did not take place here. As it relates to Quinlan, if we were to take, for example, that there was a meeting of minds and a contract did, that's not our position. But in the alternative, if this court found that there was a meeting of the minds and the contract took place, well, secondarily, I believe that there was a withdrawal of that agreement and that agreement changed. And this agreement changed by the execution of the LLC agreement, number one. Number two is that there's a May 17, 2018, order that encourages the parties to further settle. If there was a settlement in 2015, why is the judge now saying to further settle? Parties, please settle. Finally, at the start of the hearing on August 1, 2018, in the beginning before the judge gets into the hearing, the parties read onto the record a change of the terms. There's a new agreement. There's a new settlement that has taken place on the record. So if... It's an oral agreement. It's an oral agreement. So really that brings up the question, was the agreement actually on December 30, 2015? Or was the agreement actually memorialized on August 1, 2018, on the record that we see before us? Based off of the foregoing, the case that we have in front of us, K4 Enterprises, I believe that our case is distinguished from that case. As it relates to the judge's recollection, goes against both settlement proposals and the LLC agreement, that in K4 the judge simply had to make a recollection of a dollar amount. Here the judge's recollection shifts throughout the proceedings. The judge's recollection was soon thereafter, ours was three years later. And finally, Your Honor, it just doesn't make sense that there's royalties of an easement. An easement runs with the land. Minerals could be assigned. Easements cannot be assigned. Do we have a statute of frauds problem here or an issue? Because even though there's not a sale of property, we're talking about the division of land. Yes. Yes, so there is the issue of land and there's the issue of performance over one year. That was not brought up in the actual argument, but I do believe that that is a possibility of one of the reasons why these the statute of fraud exists. For these types of complicated and land-based and performance-based contracts, that's exactly what the statute of frauds is. And the statute of frauds avoids this very problem. So I do believe that the statute of frauds is an issue in this case. But that wasn't an argument in the brief. Unfortunately, it was not, Your Honor. That's always a problem. Yes. And why does Rule 304B1 apply or does not apply here? I believe that 304B1, if I'm not mistaken, Your Honor, applies because it was a final order of the court that distinguished the rest of the case. And because it distinguished the rest of the case, that's what brings it forth in front of this court. Because of this decision that the judge made, there's nothing else now to litigate if that settlement does take place. Although, interestingly enough, in the judge's proceedings in the record, she does state that this doesn't deal with prospective issues, that it only deals with mineral and energy rights. And this energy rights word was actually never brought up before. The judge kind of throws it out there. It's not in any of the settlement proposals. It's not in the motion to compel or the response. It's kind of thrown out there. So based off of that, Your Honor, Your Honors, I apologize, that there was no meeting of the minds and the recollection of the judge was clearly erroneous and unsubstantiated through the evidence. Thank you. Morning, Your Honors. Please, the court. Before I get into the substance of the issue on appeal, I just want to address one point that was raised in the yellow brief, in the reply brief, and obviously I don't get a chance in the briefs to reply to that. The statement was made by Razia, the statement was made by Assad in his reply brief, that the will contest here was not timely filed. It was timely filed. The will was admitted to probate on January 7, 2013, and the will contest was filed. An argument in the reply brief is not something that we will consider. I appreciate that. You don't have to go into it. Okay. Fine. Then I will dispense with it. You do have to go into it. Okay. And I think it's very important in this case, is how can we enforce an oral settlement agreement that has to be in writing? That has to be what? In writing. I don't think that a settlement agreement has to be in writing. Well, do you have a case that says that? Well, yeah, sure. A settlement agreement can be an oral agreement. Yeah. But if the statute of fraud says it has to be in writing, then how can we enforce it? That's what I would like to know. This was. Tell me a case that says that we can, you know. This was an agreement relating to revenue. It wasn't an agreement relating to title to land. It was an agreement that related to revenue coming from the land in two ways. One, mineral rights extracted from below the surface. And two, surface rights that's generally referred to in the documents as east. Okay. So your argument is that it doesn't, you know, it's not in violation of the statute of fraud. Right. Because it's relating to the division of revenue, of cash, of money coming in relating to easements. Now, there were two petitions for enforcement of the oral settlement agreement. The first one was resolved. And Assad acknowledges that in his brief, that that was resolved. The only thing that was before the court on August 1, 2018, and is before this court, is the second petition for enforcement of the settlement agreement. And that was as to the easement rights. The easement rights we're talking about here, and the way it's phrased in the order that was entered on August 1, is money that comes in from the use of an easement to transport minerals or energy-related items, that is oil and gas, across this land from somebody else's land. We're not talking about the extraction of minerals from this land. That has nothing to do with this settlement agreement. That's completely outside of this agreement. This agreement is solely as what happened here. There was an agreement with a third party to pay money for the transportation of mineral or oil or energy-related matter across this land on an easement. And the agreement was to divide it. Let me ask you this hypothetical. The easement, from my understanding, for the pipeline crosses over both lands. Yes. Okay. If the pipeline was only on Assad's land, would it still be your position that Razaad or Razid is entitled to the 52%? Yeah, they agreed to a global settlement. Okay. And the judge found it was a global settlement that was going to divide all the revenue issues coming in. It didn't matter whose land the easement went across. They were trying to simplify it and agree on percentages, and that was what prompted this 47-52% split. So do we really have an issue here about where the easement lies? Because, I mean, basically what we're saying is that you're entitled to the profits, right, from the pipeline, basically. Well, the payment. Yeah. Yeah. It's just a – it's like rent. Right. Yeah. So that's really what's at issue here. That is the issue. That's the only remaining issue. So what you're telling us is that there never was an issue as to the title of the pipeline. Not on this second motion for enforcement of the settlement agreement. There's no title. There's no title. At the time of the settlement agreement, was there any discussion about the ownership of the primary? At that settlement conference? Yeah. Yeah, I don't know. I wasn't there, Judge. But what they resolved was the income issue. They resolved the issue of dividing income. So you agree, then, with the appellant that they have title to the primary? The title is as the title is, yes. Okay.  And it's not in dispute. The trial judge had her notes and had her recollection, refreshed her recollection from her notes, and it's exactly like in the K-4 Enterprises case where the trial judge said, you have one version of the settlement agreement and you, counsel, have another version of the settlement agreement. I don't have to resolve that. I was there. I know what happened. It's not the best analogy in the world, but it's kind of like a direct criminal contempt of court. The judge is there. He knows what happened in that courtroom in front of him. The judge was there at the settlement conference. She knows what the agreement was. And if there was the – I'm sorry to interrupt, but then what you're saying is that you believe the trial court was correct when the trial court indicated that the pipeline was discussed in the settlement agreement. Yes. Yes. Right. Right. And if the parties don't document the settlement agreement right then and there in some way, then they bear the risk that the judge will later remember it differently than what they remember. You didn't have a court reporter there to put it on the record. Right. People generally don't have court reporters at settlement conferences in the circuit court of Cook County. But what they usually do is they scribble on a piece of paper what the deal was. Now, if it's A will pay B X amount of money and that's it, like in a personal injury case, they usually don't even do that. But if it's got something a little more complicated than that, they'll scribble on a piece of paper what the deal was. Or in this case, the appellant could have and should have had a bystander's report of proceedings of what occurred on December 30, 2015, at the settlement conference. That was a proceeding in a courtroom, and you can have a bystander's proceeding of that when you're the appellant. But he didn't. He bears the risk of not having anything, anything to document what occurred that day. Plain and simply, this was a global settlement. They resolved all the issues of the revenue that was coming in from the land the judge so found, she so stated, in the report of proceedings, it so states in the draft order that was signed, and the judge should be affirmed as to her recollection based on her notes. I can take a second to address the issue of the standard of review, and my point simply is it doesn't matter. The judge was there. The judge had her notes, had her recollection. It was clear. I agree that the lawyers and the judge were going back and forth in the report of proceedings, and it's pretty difficult to make head or tails out of who was arguing what as they were going back and forth, because they were all there, and they all understood what had occurred. But the bottom line is she came down at the end and said, that's my recollection. It was a global settlement, and the division is 4752. And the order was eminently correct and should be affirmed. The August 1, 2018, order has a sentence. I want to see, you know, what do you believe this means? Quote, each party shall have sole discretion regarding future use of their land for easements or other purposes. For anything else, they could. Well, what does that mean? I don't know. I don't know. That was something they agreed upon. And you weren't there. I wasn't there, so I don't know, Judge. I'm sorry. Thank you very much. Thank you, Roberto. Thank you. As it relates to the statute of frauds, I do believe that the K-4, there's a distinguishment here, where K-4 was in relation to money. Here we're talking about land. As much as counsel is saying revenue from the land, the reality is that easements run with the land. And if we're saying that easements are also going to be assigned into this ARC LLC for splitting of revenue, well, that's a transfer of land there. Secondly, in the order it does not say that the land is being split in this particular percentage. The order specifically says mineral and energy-related revenue will be split according to this particular percentage. So that is dealing with the ownership of the land. And I think, Your Honor, when you had mentioned what does that sentence actually mean, I think that's exactly what it means, is that they bargain for ownership of the land, Asad Khan having the 115 to 121, Razia Khan having the 102. Mineral rights will be put in a pot, and you do what you want with your land. Anything to do with easements or anything else, that's up to you. And that's where the real bargain lies. And this term global settlement, I think, cuts both ways. That in Asad Khan's version, that's still a global settlement. That the mineral rights be split, you keep your land and you do what you want with your land is a global settlement. And their position could also be a global settlement that, no, we're not talking about separating land and mineral rights. Everything goes into this pot and gets split. Both of these are global settlements from each person's perspective. But the reality was there's no meeting of the minds, there was no writing related to what's going to happen to the land, and the judge's recollection was faulty and erroneous. So a global settlement is a settlement of all issues. True. And I guess to your point, the judge did say that this is not perspective. Perspective doesn't apply perspectively to easements in the future. So I guess there is an argument as to whether it's global, but I do believe that both parties thought it was a global settlement at that time. Thank you. Well, you've given us a very interesting case, and we will take it under advisement. Court will be adjourned.